**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:18-CV-509-KDB-DCK**

| | | |
|---|---|---|
| **CASEY L. JONES, a/k/a STEPHANIE HESS, and TODD M. HESS,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **MEMORANDUM AND RECOMMENDATION** |
| **UNION COUNTY SHERIFF'S OFFICE, EDDIE CATHEY, in his official capacity and capacity as Sheriff of Union County, North Carolina, STEPHEN EASON, in his individual capacity and capacity as an employee of the United County Sheriff's Office, MENDEL MILES, in his individual capacity and capacity as an employee of the Union County Sheriff's Office, JOHN JULIAN ALDRIDGE, in his individual capacity and capacity as an employee of the Union County Sheriff's Office, JOHN DOES 1-4, in their individual capacities and capacities as employees of the Union County Sheriff's Office, DISTRICT ATTORNEY'S OFFICE OF UNION COUNTY, NORTH CAROLINA, TREY ROBISON, in his individual capacity and capacity as District Attorney of Union County, North Carolina, and KERRI FREDHEIM, in her individual capacity and capacity as Assistant District Attorney of Union County, North Carolina** | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) ) | |

      **THIS MATTER IS BEFORE THE COURT** on the "Motion To Dismiss By Defendants Cathey, Eason, Miles, Aldridge, And Union County Sheriff's Office" (Document No. 5); and the "Motion To Dismiss On Behalf Of Defendants Robison, Fredheim, And District Attorney's Office Of Union County, North Carolina" (Document No. 9). These motions have been referred to the

undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and are now ripe for disposition. Having carefully considered the arguments, the record, and the applicable authority, the undersigned will respectfully recommend that the motions be <u>granted</u>.

## I. BACKGROUND

### A. Factual

Defendants have provided thorough summaries of Plaintiffs' factual allegations as set forth in the "Complaint" (Document No. 1). <u>See</u> (Document No. 6, pp. 2-6 and Document No. 10, pp. 2-10) (citing Document No. 1, pp. 7-33). It does not appear that Plaintiffs object to Defendants' summaries of the facts. (Document Nos. 12 and 13). As such, the undersigned will largely incorporate those summaries below.

Plaintiff Casey L. Jones ("Jones"), also known as Stephanie Hess, was designated as male at birth; however, the male gender designation assigned to her at birth does not conform to her female gender identity. (Document 1, ¶ 19). In October 2015, Jones was diagnosed with Gender Identity Disorder, a medical condition where the person's gender identity does not conform to their anatomical sex at birth. (Document 1, ¶¶ 20-21). Gender Dysphoria or Gender Identity Disorder is recognized as a serious medical condition by the American Psychiatric Association in the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders. (Document No. 1, ¶ 21). Jones treats her Gender Dysphoria with prescribed estrogen therapy and by living full time as a member of the gender corresponding with her gender identity, a treatment known as the "real-life experience." (Document No. 1, ¶¶ 27, 36). Jones has altered her physical appearance to conform to her female gender identity by growing her hair long and dressing in feminine clothing. (Document No. 1, ¶ 38). Jones also elected to undergo an orchiectomy in November 2015. (Document No. 1, ¶ 37).

2

In 2016, Jones lived in South Carolina.  (Document No. 1, ¶ 42).  Jones petitioned the South Carolina Ninth Judicial Circuit Family Court for an order granting her a gender change from male to female, which the court granted.  (Document No. 1, ¶¶ 42-43).  Jones then had her South Carolina driver's license and her Oklahoma birth certificate "changed to indicate she is female." (Document No. 1, ¶ 44).

Jones and Plaintiff Todd M. Hess ("Hess") (together "Plaintiffs") were legally married on August 16, 2017.  (Document No. 1, ¶ 40).  Plaintiffs' marriage license lists Stephanie Hess as a female.  (Document No. 1, ¶ 41).

Jones has been diagnosed with bipolar disorder and anxiety disorder and has drug and alcohol addictions.  (Document No. 1, ¶ 46).  When Jones becomes inebriated due to her alcohol addiction, she can become out of control.  (Document No. 1, ¶ 47).  In November 2017, Jones "called 911 to report herself" and was arrested for possession of "what was believed to be four pills of ecstasy."  (Document No. 1, ¶ 52).

Jones had been involuntarily committed five times for treatment.  (Document No. 1, ¶ 50).  On January 29, 2018, Plaintiff Jones was admitted to a treatment center in Florida where she remained until March 14, 2018.  (Document No. 1, ¶ 54).

On March 15, 2018, Jones returned to North Carolina to the residence she shares with Plaintiff Hess.  Jones planned to enter treatment at Dove's Nest, but there was not a bed available for her until March 19, 2018.[1]  Jones moved her Dove's Nest admission date to March 20, 2018, in order to have some dental work performed on March 19, 2018.  (Document No. 1, ¶ 56)

During the evening of March 19, 2018, Jones acquired alcohol and drank it until she became inebriated.  (Document No. 1, ¶ 57).  Jones then called 911 on Hess.  Id.  Union County

---

[1]  Dove's Nest is a women's treatment program affiliated with Charlotte Rescue Mission, in Charlotte, North Carolina.  (Document No. 1, ¶ 49).

Sheriff's Deputies arrived at Plaintiffs' residence where they recognized that Jones was inebriated while Hess was not, "which was the way these calls would routinely play themselves out." (Document No. 1, ¶ 58). Deputies had been out to Plaintiffs' residence on "at least ten, if not more occasions, over the course of the past year, and they always found that Plaintiff Jones was in an inebriated state . . . Jones would routinely make the calls to 911 while in her drunken state." (Document No. 1, ¶ 102).

On March 19, 2018, the deputies allegedly advised Hess that they could not do anything and that his only option was to go to a Union County magistrate and seek an Order to involuntarily commit Plaintiff Jones. (Document No. 1, ¶ 59). Hess told the deputies that Jones was scheduled to go into treatment the next morning so he would not go to the magistrate that evening. (Document No. 1, ¶ 60).

The next morning, March 20, 2018, Jones woke up early and began to drink heavily. (Document No. 1, ¶ 61). Jones told Hess that she did not intend to go to Dove's Nest that morning. Id. Hess told her that if she did not go to Dove's Nest he had no other choice but to have her involuntarily committed. (Document No. 1, ¶ 62). In response, Jones took one of Plaintiffs' cars and fled from the residence. (Document No. 1, ¶ 63).

Hess then went to a Union County magistrate who issued an Order to have Jones involuntarily committed. (Document No. 1, ¶ 64). When Hess returned from the magistrate, a sheriff's deputy and Defendants Doe 3 and 4 were waiting at Plaintiffs' residence. (Document No. 1, ¶ 65). Hess approached the deputies assuming they were at the residence to involuntarily commit Plaintiff Jones into the local hospital pursuant to the magistrate's order. (Document No. 1, ¶ 66). Instead, the deputies told Hess that Jones had called 911 "as she regularly did whenever she became inebriated." Id. The deputies did not know about the involuntarily commitment order.

4

(Document No. 1, ¶ 67). As they were leaving Plaintiffs' residence, Defendant Doe 3 allegedly indicated, as he had regularly done in the past, that Jones was a male and not a female, to which Defendant Doe 4 allegedly agreed. (Document No. 1, ¶ 68).

On March 21, 2018, Hess picked up Jones from the hospital where she was involuntarily committed. (Document No. 1, ¶¶ 71-72, 74). Plaintiff Jones was to be admitted to Dove's Nest later that day. (Document No. 1, ¶ 73). On the way to Dove's Nest, Plaintiffs stopped by their residence in order for Jones to shower and pack items she would need while at Dove's Nest. (Document No. 1, ¶ 74). At Dove's Nest, the admissions coordinator determined Jones had alcohol on her breath and could not be admitted that day. (Document No. 1, ¶ 75). Instead, Jones was to return to Dove's Nest for admission the morning of March 23, 2018. (Document No. 1, ¶ 80).

Plaintiffs returned to their residence that evening where Hess noticed that Jones was drinking alcohol. (Document No. 1, ¶¶ 88-89). Hess reminded Jones that she could not be admitted to Dove's Nest if she had alcohol in her system. (Document No. 1, ¶ 91). At about 9:00 pm, Hess went to bed. (Document No. 1, ¶ 90). Later, Jones woke up Hess in a drunken rage and took Hess' cell phone. (Document No. 1, ¶ 92). Hess went downstairs to retrieve his cell phone from Jones believing that he may need to call 911. (Document No. 1, ¶ 93). As Hess tried to grab his cell phone from Jones's hand, Jones threw the cellphone to the floor causing the screen to break. (Document No. 1, ¶ 94). Hess immediately called 911 for assistance. (Document No. 1, ¶ 96).

Defendant Eason and Defendants Does 1 and 2, all employees of the Union County Sheriff's office, arrived at Plaintiffs' residence. (Document No. 1, ¶ 97). Defendant Doe 2 remained outside with Plaintiff Hess while Defendants Eason and Doe 1 went inside Plaintiffs' residence to question Plaintiff Jones. (Document No. 1, ¶ 98). Defendants Eason and Doe 1

noticed red marks surrounding Jones's neck and asked her if Plaintiff Hess choked her; however, Jones does not recall her response to their question. (Document No. 1, ¶¶ 99-100). Defendant Eason wrote in his report that Hess admitted to choking his wife, Jones. (Document No. 1, ¶ 120). Hess asserts that he did not choke or harm Jones the evening of March 22, 2018, and that he did not admit to doing so to Defendant Eason. (Document No. 1, ¶¶ 101, 121).

Defendant Eason then went outside to question Hess. (Document No. 1, ¶ 106). Hess tried to tell Defendant Eason that Jones suffers from alcohol addiction, that she had been involuntarily committed by a Union County Magistrate two days earlier, on March 20, 2018, and that she was scheduled to go to Dove's Nest for treatment the next morning. (Document No. 1, ¶¶ 106, 108). Defendant Eason then told Hess that he was placing him and Plaintiff Jones under arrest. (Document No. 1, ¶ 109). Todd Hess was charged with "**assault on a woman**" in Union County File No. 18 CR 051508 and Casey Jones was charged with "**simple assault**" in Union County File No. 18 CR 051509. (Document No. 1, ¶ 113) (emphasis added). Plaintiffs assert that Defendant Eason did not have probable cause to arrest Hess for assault. (Document No. 1, ¶ 125).

Defendant Eason transported Hess to the Union County Jail, while either Defendant Doe 1 or Defendant Doe 2 transported Jones to the jail. (Document No. 1, ¶ 114). Jones was taken inside the Union County Jail for processing first, while Hess remained in the back of a patrol car. (Document No. 1, ¶ 117). Defendant Eason exited the patrol car and went inside the jail. (Document No. 1, ¶ 118). When Defendant Eason returned to the patrol car, he exclaimed to Hess that Jones "has a penis." (Document No. 1, ¶ 119).

At the jail, Jones was placed in solitary confinement instead of being placed in the women's section of the jail. (Document No. 1, ¶ 31). Defendants Miles and Aldridge required Jones to be secluded from the other female inmates in one area of the jail. (Document No. 1, ¶ 147). Plaintiffs

6

contend that placing Jones "in the woman's section of the jail would have been the best approach given her Gender Dysphoria and desires to be recognized as female." (Document No. 1, ¶ 32). Defendants treated Jones differently than other females taken into custody and held at the Union County Jail despite knowing that she was legally a female by the information on her driver's license or by being told by Hess of her female gender. (Document No. 1, ¶ 146). Plaintiffs assert that Defendant Miles stated the jail determines an inmate's sex based on the "the parts they have" and not on their legal status. (Document No. 1, ¶ 149). Plaintiffs further assert that Defendant Eason discriminated against Jones by taking her to jail instead of to a treatment center. (Document No. 1, ¶¶ 110-112).

Later, Hess submitted a public records request to Union County Government Emergency Services for the 911 call information from the evening of March 22, 2018. (Document No. 1, ¶ 166). On March 29, 2018, Susan Farr, Operations Manager for Union County Government Emergency Services, responded to Plaintiff Hess's public records request via email stating that she "provided all that [] [she could] without a subpoena." (Document No. 1, ¶ 167).

On April 25, 2018, Plaintiff Jones "committed herself to a long term, in patient treatment program" for drug and alcohol addiction at Dove's Nest "where she remained through the duration of the program before filing this Complaint." (Document No. 1, ¶ 49).

On May 10, 2018, Hess issued a subpoena to Defendant Cathey and Defendant Union County Sheriff's Office (hereinafter known as "UCSO") to produce evidence, documents, and 911 call transcripts. (Document No. 1, ¶ 168). Defendant Aldridge responded to the subpoena indicating that Defendant Cathey would not produce any such evidence, and filed a Motion to Expunge Subpoena on behalf of Defendants Cathey and UCSO in Union County Court File No. 18 CR 051508. (Document No. 1, ¶¶ 169-170).

On June 4, 2018, Hess also issued a subpoena to Defendants Kerri Fredheim ("Fredheim") and the District Attorney's Office of Union County, North Carolina ("DAO") for evidence, documents, and 911 transcripts. (Document No. 1, ¶ 180) Defendant Fredheim responded by filing a Motion to Expunge Subpoena in Union County File No. 18 CR 051508. (Document No. 1, ¶ 181). In her motion, Fredheim acknowledged that exculpatory evidence, or Brady evidence, would have to be produced to Hess. (Document No. 1, ¶ 182). Hess asserts that it was unclear to him whether Defendant Fredheim intended to give him exculpatory evidence. Id.

A hearing was held in Union County District Court on June 12, 2018 regarding the motion filed by Defendant Aldridge on behalf of Defendants Cathey and UCSO. (Document No. 1, ¶¶ 171, 174, 177). Purportedly, Defendant Aldridge stated to the Court that Defendant UCSO had no controlling oversight regarding the distribution of content from 911 calls. (Document No. 1, ¶177). The presiding District Court Judge entered an Order granting the Motion to Quash the Subpoena filed on behalf of Defendants Cathey and UCSO on the basis that discovery is not allowed while a matter is pending in District Court. (Document No. 1, ¶ 171). In entering the Order, the District Court Judge allegedly "emphasized that no such subpoena was needed since Defendants were constitutionally obligated to produce exculpatory evidence to Plaintiff Hess." (Document No. 1, ¶ 171).

Also on or about June 12, 2018, the presiding District Court Judge entered an Order granting the Motion to Quash the Subpoena filed on behalf of Defendants Fredheim and the DAO. (Document No. 1, ¶ 183). Again, the District Court Judge allegedly "emphasized that no such subpoena was needed since Defendants were constitutionally obligated to produce exculpatory evidence to Plaintiff Hess." (Document No. 1, ¶ 183). Plaintiffs contend that Defendants failed to produce exculpatory evidence. (Document No. 1, ¶ 184, 188).

Plaintiffs further allege that during the June 12, 2018 District Court hearing "Defendant Fredheim stated in Court that Plaintiff Hess and Plaintiff Jones were 'estranged' without having definitive proof to support the statement." (Document No. 1, ¶ 191). Plaintiffs assert that the legal definition of estrangement includes abandonment or alienation, and suggest that the legal definition leads to an implication that Plaintiffs were "unchaste." (Document No. 1, ¶¶ 192-193). Plaintiffs further assert that Fredheim's statement in court that Hess and Jones were "estranged" was false and malicious, slanderous, and evidence of "her discriminatory belief that Plaintiff Hess as a straight male married to a transgender female cannot be in an unchaste relationship." (Document No. 1, ¶¶ 195, 197). Plaintiffs also assert that Fredheim's statement characterizing her voluntary commitment for treatment as estrangement from her husband "invidiously discriminated against Plaintiff Jones' disability." (Document No. 1, ¶ 198).

**B. Procedural**

Plaintiffs Jones and Hess, appearing *pro se*, initiated the instant action with the filing of their "Complaint" (Document No. 1) on September 19, 2018.[2] The Complaint is brought against twelve (12) Defendants and includes seventeen (17) causes of action. (Document No. 1). Defendants include the Union County Sheriff's Office ("UCSO"), Sheriff Eddie Cathey ("Cathey"), Deputy Stephen Eason ("Eason"), Captain Mendel Miles ("Miles"), Attorney John Julian Aldridge ("Aldridge") and four (4) unnamed deputy John Doe employees of the UCSO ("Defendant Doe 1-4"), (all together, the "Sheriff Defendants"). Id. Defendants also include the District Attorney's Office of Union County, North Carolina ("DAO"), District Attorney Trey Robison ("Robison"), and Assistant District Attorney Kerri Fredheim ("Fredheim") (all together, "State Judicial Defendants"). Id.

---

[2] Plaintiff Hess is a licensed attorney. (Document No. 1, ¶ 114).

9

The state court action pending against Plaintiff Todd Hess, charging him with assault on a female – his wife Casey Lee Jones, a/k/a Stephanie Hess – was dismissed on November 7, 2018. (Document No. 6, p. 6; Document No. 6-1, p. 3); see also (Document No. 10, p. 10; Document No. 10-2, p. 2). The state prosecutor dismissed the action, noting that "[v]ictim has recanted and refuses to testify." Id. (citing Document No. 6-1, pp. 4-5); see also (Document No. 10-1, p. 2). Specifically, Plaintiff Jones provided an "Affidavit" after listening to the 911 call she made on March 22, 2018. (Document No. 6-1, p. 4). Jones stated in part that she did not remember:

> stating to the 911 operator that my husband had attempted to choke or strangle me. Furthermore, I do not remember my husband attempting to choke or strangle me on the night in question. These statements were likely said due to my inebriated state.

(Document No. 6-1, p. 5). Jones' Affidavit further provides they she refuses to testify against her husband, Todd Hess, and that she requests that the charges against her husband "in which I am the alleged victim be dismissed." Id. The pending state charge against Jones for simple assault on Hess was also dismissed by the state prosecutor on November 7, 2018. (Document No. 6, p. 6; Document No. 6-2, p. 4); see also (Document No. 10, p. 10).[3]

On December 19, 2018, the pending "Motion To Dismiss By Defendants Cathey, Eason, Miles, Aldridge, And The Union County Sheriff's Office" (Document No. 5) and "Motion To Dismiss On Behalf Of Defendants Robison, Fredheim, and District Attorney's Office Of Union County, North Carolina" (Document No. 9) were filed by the Sheriff Defendants and State Judicial Defendants (together, "Defendants") in this Court. Sheriff Defendants seek dismissal pursuant to

---

[3] Defendants also note that dismissal of State of North Carolina v. Casey Jones, Union County File No. 18 CR 051509 and dismissal and Affidavit in State of North Carolina v. Todd Hess, Union County File No. 18 CR 051508, are state court actions referenced by Plaintiffs in their Complaint. (Document No. 10, p. 7, n. 1); see also (Document Nos. 10-1, 10-2, and 10-3).

10

Fed.R.Civ.P. 12(b)(6) and the State Judicial Defendants seek dismissal pursuant to Fed.R.Civ.P. 12(b)(1), (2), and (6) of the instant lawsuit before this Court for alleged civil rights violations.

The pending motions have been briefed and are now ripe for review and a recommended disposition to the Honorable Kenneth D. Bell.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) seeks to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff has the burden of proving that subject matter jurisdiction exists. See Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "The subject matter jurisdiction of federal courts is limited and the federal courts may exercise only that jurisdiction which Congress has prescribed." Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).

When a defendant challenges subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1), "the district court is to regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, 945 F.2d at 768. The district court should grant the Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id. See also, Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999).

11

A motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc. v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains "enough facts to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also, Robinson v. American Honda Motor Co., Inc., 551 F.3d 218, 222 (4th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

The Supreme Court has also opined that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (quoting Twombly, 550 U.S. at 555-56).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III. DISCUSSION

### A. Sheriff Defendants' Motion To Dismiss

Sheriff Defendants contend that all fourteen (14) claims against them fail to state a claim upon which relief can be granted.  (Document No. 6).  In short, they assert that half the claims are not causes of action at all, and the other half fail on the merits.  (Document No. 6, p. 8).

### 1. Federal Claims

#### a. Equal Protection

The parties agree that to succeed on a claim for violation of the equal protection clause of the Fourteenth Amendment plaintiffs must show that they have "been treated differently from others with whom [they are] similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." See (Document No. 6, p. 8 and Document No. 13, p. 11) (quoting Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001)).

Sheriff Defendants note that although the Complaint contains assertions that Jones was "treated as male," "the factual allegations clearly allege precisely the opposite – Todd Hess was charged with 'assault on a woman'" and that Jones was not placed in the county jail with any male detainees.  (Document No. 6, p. 9).  Accepting as true Plaintiffs' allegations that Jones was not placed with the jail's female population because she is transgender, and that transgender female detainees are similarly situated to cisgender female detainees, Sheriff Defendants assume Plaintiffs have adequately pled that Jones was treated differently than similarly situated cisgendered female detainees.  (Document No. 6, pp. 9-10) (citing Veney v. Wyche, 293 F.3d 726, 731 (4th Cir. 2002)).

13

However, Sheriff Defendants argue that their "conduct in housing Jones separately was justified as a matter of law under the requisite level of scrutiny." (Document No. 6, p. 10).

> In the context of jails and prisons, particularly as to the day-to-day decisions of jail administration, deference is owed and the level of scrutiny reduced. In the jail context, the plaintiff must plead and prove that the different treatment was unreasonable "in light of the special security and management concerns" in the context of detention. *Smith v. Beck*, No. 1:08CV166, 2011 WL 65962, *7 (M.D.N.C. Jan. 10, 2011) (*citing Morrison*, 239 F.3d at 655).

Id.

Sheriff Defendants contend that the Fourth Circuit's decision in Veney is controlling here. Id. They note that Veney sets forth four factors (the Turner factors) that guide the analysis of an Equal Protection claim against the conduct of a jail:

> (1) the existence of a rational connection between the conduct and a legitimate government interest; (2) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and the allocation of [jail] resources generally"; (3) the absence of ready alternatives, although "this is not a least restrictive alternative test,"; and, where applicable, (4) whether there are alternative means of exercising the right open to detainees.

(Document No. 6, p. 11) (quoting Veney, 293 F.3d at 732) (citing Turner v. Safley, 482 U.S. 78, 89-90, (1987))).

Sheriff Defendants argue that in this case, as in Veney, jail "safety and security are legitimate penological interests," and there is a rational relationship between security and separate housing on the basis of sexual orientation and gender. Id. (quoting Veney, 293 F.3d at 734). Moreover, Sheriff Defendants contend that "the impact on jail resources from spending additional time in an effort to determine which transgender detainees to house with which sex detainees' general population and burdens on guards to prevent or remedy any associated violence from cohabitations is sufficient to support separate housing." Id. (citing Veney, 293 F.3d at 735). They further argue that "where the legitimate interest is safety and the source of insecurity is

14

cohabitation of transgender detainees with cisgendered detainees, there is no ready alternative to separate housing." Id. Sheriff Defendants conclude that even taking Plaintiffs' allegations as true, Jones' Equal Protection claim should be dismissed. (Document No. 6, p. 12).

In response, Plaintiffs argue that Sheriff Defendants have failed to state a rational basis for treating Jones differently than other women and placing her in solitary confinement for the duration of her incarceration at the Union County jail.[4] (Document No. 13, p. 11). Plaintiffs seem to acknowledge the applicability of the Turner factors, but argue that Sheriff Defendants fail to state a rational basis for why placing Jones with women at the jail compromises jail safety and security. (Document No. 13, pp. 11-12). Plaintiffs further argue that Sheriff Defendants are relying on facts that are in dispute and that they cannot be allowed to rely on "their own alleged facts in support of their motion to dismiss." (Document No. 13, p. 12).

Next, Plaintiffs contend that Sheriff Defendants have not asserted a basis for the second Turner factor - "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and the allocation of [jail] resources generally." (Document No. 13, pp. 12-13). Then, addressing the third Turner factor, Plaintiffs assert that "the Union County jail has set up separate accommodations by keeping Plaintiff Jones in solitary confinement," but they could have placed Jones with the women in the jail. (Document No. 13, p. 13)

In reply, Sheriff Defendants contend that Jones' Equal Protection claim is "squarely foreclosed by the Fourth Circuit's decision in Veney." (Document No. 14, p. 4).

> Plaintiffs simply ignore this binding precedent in opposing the motion to dismiss. As in *Veney*, jail security is a legitimate government interest, housing transgender female detainees separately from cisgendered detainees is rationally related to the purposes of preventing violence against the transgendered detainee, and preventing sexual contact which may occur through cohabitation. Separate housing for transgender female detainees,

---

[4] Plaintiffs do not appear to allege the "duration" of Jones' stay in the Union County jail.

15

like separate housing for homosexual prisoners in *Veney*, is an apt
tool for reducing and removing these risks. Indeed, though it need
not be a tight fit to survive rational basis review, the fit between the
means of separately housing transgender female detainees and the
ends of reducing violence against them which can occur when they
are housed with cisgendered detainees (of either sex), is obviously
strong.
. . .
Rational basis review does not require any evidence of any kind.
The "fit between the [government action] and the public purposes
behind it need not be mathematically precise. As long as [the
governmental actor] has a reasonable basis for adopting the
classification, which can include 'rational speculation unsupported
by evidence or empirical data,' the [conduct] will pass constitutional
muster." *Wilkins v. Gaddy*, 734 F.3d 344, 348, (4th Cir. 2013)
(quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 315
(1993)). As the Fourth Circuit noted in *Veney*, under rational basis
review, the government conduct's constitutionality does not depend
on the characteristics of the individual plaintiff. *Veney*, 293 F.3d at
734 n.8.

(Document No. 14, pp. 4-5).

The undersigned finds Sheriff Defendants' arguments, and reliance on <u>Veney</u>, to be

persuasive. In contrast, Plaintiffs fail to articulate a compelling argument against dismissal, or

even attempt to distinguish <u>Veney</u>. The undersigned observes that the Fourth Circuit applying the

<u>Turner</u> factors in <u>Veney</u> opined that "decisions relating to the accommodation of inmates, such as

cell assignments, are the type of day-to-day judgments that rest firmly in the discretion of prison

officials." <u>Veney</u>, 293 F.3d at 733 (citing <u>Pitts v. Thornburgh</u>, 866 F.2d 1450, 1453-54 (D.C.Cir.

1989). Ultimately, the <u>Veney</u> court concluded that because Mr. Veney had "not alleged facts, that

if proven true, would demonstrate that the alleged prison policy at issue is not reasonably related

to legitimate penological interests, his complaint fails to state a claim upon which relief may be

granted." <u>Id.</u> at 735.

The facts as presented by Plaintiffs show that the Sheriff Defendants responded to a 911

call regarding a domestic disturbance at Plaintiffs' home on March 22, 2018, and that during that

16

incident and/or response, there were allegations and/or evidence that Plaintiffs had assaulted each other and that Jones was intoxicated to the extent that she would have significant lapses in her memory of the events of that night. Although there were moments when one or more Sheriff Defendants referred to Plaintiff Jones as a male and/or noted she had male genitalia, Plaintiffs' facts also show that Sheriff Defendants referred to Jones as being female, Sheriff Defendants knew she identified as female, and Sheriff Defendants put her in solitary confinement rather than with the general male or female populations of the Union County jail. According to the Complaint, Plaintiff Hess' alleged assault on Plaintiff Jones was charged as an "assault on a woman." (Document No. 1, ¶ 113). The State's "Assault on a Female" charge in File No. 18 CR 51508 against Todd Hess was dismissed on November 7, 2018. See (Document No. 6-1, p. 3; Document No. 10-1, p. 2).

Accepting Plaintiffs' allegations as true, based on the foregoing authority and arguments, the undersigned does not find that Plaintiffs have asserted an Equal Protection claim that has "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. As in Veney, Plaintiffs have not alleged facts that would demonstrate that Sheriff Defendants' actions were not reasonably related to legitimate penological interests and within their discretion. As such, the undersigned will recommend that Plaintiffs' First Cause Of Action be dismissed.

Regarding the Second Cause Of Action, Plaintiffs' Equal Protection claim as to Plaintiff Hess, Sheriff Defendants assert that the Complaint fails to include any allegation that Hess was treated differently than any other similarly situated person. (Document No. 6, p. 8). Sheriff Defendants contend this failure defeats Hess' Equal Protection claim. (Document No. 6, p. 9) (citing Etters v. Bennett, 2011 WL 976472, at * 11 (E.D.N.C. March 16, 2011). In addition, Sheriff

Defendants contend that Hess' conclusory assertion that he was discriminated against because of his "gender identity" "being a straight male who is married to a transgender female," is insufficient to support a plausible claim. Id.

In response, Plaintiffs argue – without citation to the Complaint or other factual support – that Sheriff Defendants "chose to treat Plaintiff Hess differently from other married men." (Document No. 13, p. 14). Plaintiffs seem to further argue that Hess was discriminated against "as a man married to a transgender woman" because Defendant Eason "included false accusations" in his report that relied "on the statements of Plaintiff Jones who was inebriated on the evening of March 22, 2018." (Document No. 13, p. 15). (citing Document No. 1, ¶¶ 125-27). Plaintiffs also suggest that Hess was discriminated against because certain Sheriff Defendants expressed that Jones was "a man not a woman." Id.

In reply, Sheriff Defendants effectively re-assert that Plaintiffs have not made a plausible allegation that Hess was treated differently than other married men. (Document No. 14, p. 7). Sheriff Defendants argue that Hess' treatment on or about March 22, 2018, was based on evidence of a crime, including: red marks on Jones' neck, a broken cell phone, and a 911 call alleging that he choked Jones. (Document No. 14, p. 8). The reply essentially argues that Plaintiffs have not plausibly alleged that Hess was treated any differently than any similarly situated person, regardless of marital status and/or the gender or sexual orientation of either partner.

The undersigned agrees and finds that Plaintiffs' Second Cause Of Action fails to state a claim upon which relief may be granted, and therefore, should be dismissed.

**b. Violence Against Women Act**

Plaintiffs' Third and Fourth Causes Of Action allege violations of the Violence Against Women Act ("VAWA") by Sheriff Defendants. (Document No. 1, pp. 37-40). Sheriff Defendants

argue that there is no private right of action to bring such a claim. (Document No. 6, p. 12) (citing In re Miller, 124 Fed.Appx. 152, 154 (4th Cir. Feb. 3, 2005) (citing Alexander v. Sandoval, 532 U.S. 275, 286-87)). "VAWA does not create an express private right of action for plaintiffs to sue VAWA grant recipients for violating the non-discrimination condition of VAWA grants." Id. They note that VAWA "did create an express private right of action against private parties for gender violence, but that provision was invalidated on constitutional grounds." Id. (citing United State v. Morrison, 529 U.S 598, 617 (2000). Sheriff Defendants contend that the exclusive remedy provided by VAWA is for the United States to stop payment or seek recovery of grant dollars if a recipient is found to violate the nondiscrimination requirement – but there is no separate cause of action to enforce the grant conditions. Id.

Plaintiffs argue in response to the motion to dismiss that they have a right to bring a VAWA action against Sheriff Defendants in their capacity as a state entity. (Document No. 13, pp. 16-18) (citing U.S. Const. amend XIV). In reply, Sheriff Defendants argue that it "is of no moment" that VAWA is constitutional; VAWA grants are a valid exercise of Congress' Spending Clause power, and in that exercise, it chose not to create a private right of action for individuals to sue VAWA-grant recipients. (Document No. 14, p. 9).

The undersigned first notes that neither side has provided a citation to the statute in question, either in the Complaint or in the briefs, and that Plaintiffs fail to cite any authority applying VAWA as a cause of action against a state entity. It appears that the relevant statute is 34 U.S.C. § 12291 *et seq*. (formerly 42 U.S.C. § 13981).

> To determine whether a statute creates a federal private right, we look to the statutory text for " 'rights-creating' language." See *Alexander v. Sandoval,* 532 U.S. 275, 288, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001). "Rights-creating language" is language that "explicitly confer[s] a right directly on a class of persons that

19

include[s] the plaintiff." *Cannon v. University of Chicago,* 441 U.S. 677, 690 n. 13, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

In re Miller, 124 Fed. Appx.at 154.

To the extent the language of 34 U.S.C. § 12361(c) creates a cause of action against a person "who commits a crime of violence motivated by gender…," the undersigned is not persuaded that Plaintiffs make plausible allegations to support such a claim here – even if such cause of action were available to them – because the Complaint does not allege a "crime of violence" within the meaning of the statute. However, Sheriff Defendants' arguments and authority also appear to adequately support their position that VAWA does *not* include a civil remedy provision available to Plaintiffs. See United States v. Morrison, 529 U.S. 598 (2000), aff'g Brzonkala v. Virginia Polytechnic Institute and State University, 169 F.3d 820 (4th Cir. 1999).

Based on the foregoing, the undersigned will recommend that Plaintiffs' Third and Fourth Causes Of Action be dismissed.

### c. Americans With Disabilities Act

Plaintiffs' Fifth, Sixth, and Seventh Causes Of Action allege violation of the Americans With Disabilities Act, 42 U.S.C. § 12131 *et seq*. ("ADA").

Sheriff Defendants contend Plaintiffs fail to sufficiently plead any ADA claim. (Document No. 6, pp. 13-16).

> All three of the ADA counts in the complaint suffer from a common hurdle. Under the ADA, "the term 'disability shall not include . . . transsexualism . . . [or] gender identity disorders not resulting from physical impairments . . . ." 42 U.S.C. § 12211. Thus, no ADA claim can be based on Stephanie Hess's gender dysphoria, although her alleged bipolar disorder, anxiety disorder, and alcohol addiction could be the basis of such a claim. Because the statute defines gender dysphoria out of ADA claims and the complaint wholly relies on gender dysphoria to support the allegations of disability discrimination, none of the ADA claims plausibly plead a claim upon which relief can be granted.

(Document No. 6, pp. 13-14).

Sheriff Defendants note that Plaintiffs must establish that they have an actionable disability, are otherwise qualified to receive the benefits of a public service, program, or activity, and were denied those benefits by reason of the disability. (Document N. 6, p. 14) (citing Wicomico Nursing Home v. Padilla, 910 F.3d 739, 750 (4th Cir. Dec. 8, 2018)). The "by reason of" element in a Title II claim requires the plaintiff plead that the actionable disability was "a motivating cause." Id. Sheriff Defendants further note that the Complaint alleges they failed to provide a reasonable accommodation for Jones' gender dysphoria, bipolar disorder, anxiety disorder, or alcohol addiction, when they did not house her with other female detainees. Id. (citing Document No. 1, ¶¶147, 237).

Sheriff Defendants argue that gender dysphoria cannot provide the basis for Plaintiffs' Title II claim(s), and that the Complaint fails to allege that placing Jones in solitary confinement was motivated by her bipolar disorder, anxiety disorder or alcohol addiction. Id. They note that the Complaint actually alleges the basis for Jones' separation from other female detainees was anatomical, not "by reason of" her other alleged disabilities. (Document No. 6, p. 15). In addition, the motion to dismiss notes that the obligation to provide a reasonable accommodation is triggered by a request from the disabled individual, but the Complaint does not allege any such request by Jones. Id. (citing Kiman v. New Hampshire Dep't of Corrections, 451 F.3d 274, 283 (1st Cir. 2006)).

Sheriff Defendants also argue that Plaintiffs' ADA retaliation claim suffers from three fatal flaws, including: (1) it is entirely predicated on gender dysphoria; (2) there is no allegation that Jones engaged in protected activity or suffered adverse action as a consequence; and (3) the allegations are entirely conclusory. (Document No. 6, p. 15). Finally, Sheriff Defendants argue

that Hess' "Associative Disability Discrimination" claim fails because no such claim exists under Title II for claims against public entities. (Document No. 6, p. 16).

In response, Plaintiffs first note that Jones "was placed in solitary instead of placing her in the woman's section of the jail, *which would have been more compatible* with her gender dysphoria." (Document No. 13, p. 18) (citing Document No. 1, ¶¶ 31-32) (emphasis added). Plaintiffs then seem to urge this Court to interpret 42 U.S.C. ¶ 12211 to treat Jones' gender identity disorder as being not excluded by the ADA – contrary to the plain language of the statute. (Document No. 13, pp. 18-20). In addition, Plaintiffs assert that Jones also bases her claim on her alcohol addiction, bipolar disorder and anxiety disorder, but does not address Sheriff Defendants' arguments regarding those claims. (Document No. 13, p. 20).

Sheriff Defendants' reply persuasively addresses Plaintiffs arguments and re-asserts their arguments for dismissal. (Document No. 14, pp. 10-14). In pertinent part, Sheriff Defendants argue that 42 U.S.C. ¶ 12211 "reflects Congress' judgment that some diagnosable medical conditions should not create liability under the ADA, a judgment perfectly within Congress' power and clearly expressed by the statute's plain language." (Document No. 14, p. 13). They also note that Plaintiffs do not dispute that Jones never requested a reasonable accommodation for her alleged disabilities. Id.

Based on Sheriff Defendants' reasoning and 42 U.S.C. ¶ 12211, the undersigned will respectfully recommend that Plaintiffs' Fifth, Sixth, and Seventh Causes Of Action for ADA claims be dismissed.

### d. Full Faith and Credit Clause

The Complaint's Eighth Cause Of Action alleges violation of the Full Faith and Credit Clause. (Document No. 1, p. 42). Plaintiffs contend that Sheriff Defendants violated Plaintiff

Jones' rights under the Full Faith and Credit Clause by insisting that Jones was male, even though they "were made aware" that Jones was recognized as a female by a South Carolina court.  Id.

Sheriff Defendants argue there is no cognizable claim here.  (Document No. 6, p. 16).  They note that the "Full Faith and Credit Clause, and the statute implementing it, require courts of one jurisdiction to give preclusive effect to valid judgments from other jurisdictions."  Id. (citing Baker v. General Motors, 522 U.S. 222, 232-34 (1994));  see also U.S. Const. art. IV, § 1.  Sheriff Defendants further argue that:

> The clause creates a rule of decision, not a cause of action.  *See Armstrong*, 135 S.Ct. at 1383-84 (holding the same for the Supremacy Clause).  Allegations that the Sheriff Defendants "insisted that [Stephan[i]e Hess] was a male," despite a court order to the contrary in South Carolina, (DE 1 at ¶248), fail to plead any claim for relief.  Accordingly, count eight should be dismissed with prejudice.

(Document No. 6, p. 16).

Sheriff Defendants cite a Fifth Circuit decision that is instructive here:

> The Supreme Court has described the full faith and credit clause as imposing a constitutional "rule of decision" on state courts.  While the Court has at times referred to the clause in terms of individual "rights," it consistently identifies the violators of that right as state *courts*. . . .
>
> The cases thus couple the individual right with the *duty of courts* and tether the right to res judicata principles.  This explains the usual posture of full faith and credit cases:  the issue arises in the context of pending litigation—not as a claim brought against a party failing to afford full faith and credit to a state judgment, but as a basis to challenge the forum court's decision.

Adar v. Smith, 639 F.3d 146, 153-154 (5th Cir. 2011) (*en banc*) (citations omitted).

In response, Plaintiffs contend that Sheriff Defendants have not stated a "basis for why they may ignore the ruling of the Court in the State of South Carolina that declares Plaintiff Jones to be a female."  (Document No. 13, p. 14).  Sheriff Defendants contend that Plaintiffs' contention

misses the point; the question is whether they can be sued for allegedly ignoring the South Carolina court's ruling. (Document No. 14, p. 10). Sheriff Defendants conclude they cannot. Id.

The undersigned finds the motion to dismiss, and particularly Defendants' cited authority, to be compelling on this issue. As such, the undersigned will recommend dismissal of Plaintiff's Eighth Cause Of Action.

e. **_Brady_ claim**

In their Ninth Cause Of Action, Plaintiffs contend that Sheriff Defendants and State Judicial Defendants violated Plaintiffs' due process rights by refusing to turn over exculpatory evidence. (Document No. 1, ¶¶ 251-253).

Sheriff Defendants assert that a claim based on alleged violations of obligations established by Brady v. Maryland, 373 U.S. 83 (1963) must show that a defendant: "(1) intentionally withheld exculpatory evidence from the prosecution; (2) which resulted in a wrongful conviction; (3) that is subsequently overturned pursuant to a _Brady_ violation; and (4) the officers acted in bad faith." (Document No. 6, p. 17) (quoting Chapman v. Rhoney, 2011 WL 7971750, *8 (W.D.N.C. Aug. 3, 2011) (citing Jean v. Collins, 221 F.3d 656, 663 (2000)). Sheriff Defendants note that neither Plaintiff was convicted of any crime. Id. Moreover, the underlying criminal cases were dismissed and Jones' affidavit states that the evidence was subsequently provided. Id. Sheriff Defendants conclude that Plaintiffs' claim fails because they have not, and cannot, allege critical elements of a Brady claim. Id.

Plaintiffs' response fails to address the motion's arguments or authority, and as such is not very helpful or persuasive. (Document No. 13, p. 21). In reply, Sheriff Defendants re-assert "[w]here no conviction occurred (and no trial, in this instance), no _Brady_ claim is possible." (Document No. 14, p. 14).

24

The undersigned agrees and will recommend that Plaintiffs' Ninth Cause Of Action be dismissed.

**2**. **State Claims**

Finally, regarding Plaintiffs' claims brought pursuant to state law, Sheriff Defendants suggest that the Court exercise its discretion to decline supplemental jurisdiction over Plaintiffs' state law claims upon dismissal of the federal questions presented. (Document No. 6, p. 18). Plaintiffs argue that even if the Court chooses to exercise jurisdiction, these claims are also subject to dismissal pursuant to Fed.R.Civ.P. 12(b)(6). Id.

In addition, Sheriff Defendants persuasively argue that all Defendants are entitled to qualified immunity. (Document No. 6, pp. 20-22).

> The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, **and (2) that the right was clearly established at the time of the challenged conduct**." *Wood v. Moss*, 572 U.S. 744, 757 (2014) (internal quotation marks omitted). The clearly established prong may be decided at the pleadings stage. *Id.* at 764 (reversing refusal to dismiss complaint because it failed to allege violation of a clearly established right). To be clearly established, "'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *White v. Pauly*, 137 S.Ct. 548, 551 (2017)).

(Document No. 6, p. 20). Sheriff Defendants suggest there is no "area of constitutional law that is less 'beyond debate' than the equal protection rights of transgender persons." (Document No. 6, p. 21).

In response, Plaintiffs acknowledge that Defendants are only liable if their conduct "violates 'clearly established rights of which a reasonable person would have known.'" (Document No. 13, p. 22). Plaintiffs then provide little, if any, argument or authority to rebut the

motion to dismiss.  Id.  Specifically, they do not effectively assert, or cite any legal authority that asserts, that Defendants in this case violated a "clearly established" right(s) of Plaintiffs.

Sheriff Defendants note that the "law relating to transgender persons is rapidly evolving," but "[t]here is not one decision holding that any jail or prison is required as a matter of Equal Protection law to change the housing of any transgender inmate or detainee." (Document No. 14, pp. 15-16).  The rights alleged here – in the context of custodial detention – are not clearly established.  (Document No. 14, p. 16).

The undersigned finds these arguments by Sheriff Defendants, as well as other arguments not discussed here, to be most compelling.  In short, the undersigned finds that all claims against Sheriff Defendants should be dismissed.

## B.  State Judicial Defendants' Motion To Dismiss

Defendant Trey Robison is the District Attorney for North Carolina's Prosecutorial District 20-B, which encompasses Union County, North Carolina.  (Document No. 10, p. 12).  As District Attorney, Robison is responsible for preparing the trial dockets and prosecuting in the name of the State in a timely manner all criminal actions and infractions requiring prosecution in the district and superior courts of his prosecutorial district.  (Document No. 10, pp. 12-13) (citing N.C. Gen. Stat. § 7A-61 (2018)).  As such, Defendant Robison is a state judicial official of North Carolina's Judicial Department.  (Document No. 10, p. 13) (citing N.C. Const. art. IV, § 18;  N.C. Gen. Stat. §§ 7A-60, -61)).  Likewise, Defendant Fredheim is an Assistant District Attorney for North Carolina's Prosecutorial District 20B.  Id.  As an Assistant District Attorney, Fredheim is also a state judicial official of North Carolina's Judicial Department.  Id. (citing N.C. Const. art. IV, § 18;  N.C. Gen. Stat. §§ 7A-60, -63)).

State Judicial Defendants contend, therefore, that Plaintiffs have filed a lawsuit against the State of North Carolina for all claims asserted against them in their official capacities. Id. Similarly, Plaintiffs' claims against Defendant DAO are claims against the office which Defendant Robison holds and are duplicative in nature as they too are claims against the State of North Carolina. Id. (citing Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000)).

State Judicial Defendants note that Plaintiffs appear to assert claims arising under federal law against them in their official capacities for alleged violations of their rights to due process under the Fourteenth Amendment and for aiding and abetting gender discrimination by the other Defendants to his action. Id. In doing so, Plaintiffs have not alleged a waiver of sovereign immunity by Congress for these claims, that the State has consented to waive its sovereign immunity for these claims, or that they are seeking prospective declaratory relief from an ongoing violation of federal law by the State Judicial Defendants. (Document No. 10, pp. 13-14). Instead, Plaintiffs are seeking compensatory and punitive damages from the State Judicial Defendants and retrospective declaratory relief that State Judicial Defendants' conduct violated their rights under the Fourteenth Amendment for allegedly withholding exculpatory evidence. (Document No. 10, p. 14) (citing Document No. 1, p. 50). Since State Judicial Defendants dismissed the charges pending against Plaintiffs in Union County File Nos. 18 CR 051508 and 18 CR 051509, the requested declaratory relief is retroactive in nature as it relates to acts or omissions which have already occurred. Id. As such, State Judicial Defendants assert that the Eleventh Amendment bars these claims for relief asserted by Plaintiffs. Id.

Defendants note that the Eleventh Amendment recognizes the sovereign immunity of the states as a limitation on the judicial power granted under Article III of the United States Constitution. (Document No. 10, pp. 11-12) (citing Pennhurst State Sch. & Hosp. v. Halderman,

465 U.S. 89, 98 (1984) (citing Hans v. Louisiana, 134 U.S. 1, 15 (1890))). The Eleventh Amendment bars suits brought in federal district court against a state by its own citizens as well as those by citizens of other states. (Document No. 10, p. 12). This immunity extends to arms of the State, including state agencies and state officers acting in their official capacities. Id.

Moreover, the Eleventh Amendment also bars Plaintiffs' claims against State Judicial Defendants in their individual capacities as they are all state employees of the Judicial Department of the State of North Carolina. (Document No. 10, p. 14). The State of North Carolina provides for the defense of any employee or former employee in a civil action brought against them in their official or individual capacity, or both, on account of an act or omission made in the scope and course of their employment as a State employee. (Document No. 10, pp. 14-15) (citing N.C.Gen.Stat. § 143-300.3)). See also Nivens v. Gilchrist, 444 F.3d 237 (4th Cir. 2006) and Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 480 (4th Cir. 2005).

Based on the foregoing, State Judicial Defendants conclude that this action should be dismissed for lack of subject matter jurisdiction and personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and (2). (Document No. 10, p. 15). State Judicial Defendants also add compelling arguments for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). (Document No. 10, pp. 15-20).

Plaintiffs' response re-asserts their claims that State Judicial Defendants are liable for discrimination and defamation based primarily on: (1) their alleged failure to provide exculpatory evidence in the underlying state court actions pursuant to Brady; (2) "aiding and abetting the other Defendants named" in this lawsuit; and (3) describing the Plaintiffs as "'estranged' without having definitive proof to support the statement" during a motion hearing in state district court. (Document No. 12, pp. 9-10).

Plaintiffs provide a lengthy response that is largely conclusory and unpersuasive. (Document No. 12). For example, Plaintiffs contest the applicability of sovereign immunity, prosecutorial immunity, and qualified immunity, and even assert that State Judicial Defendants "cannot be characterized as state officials" because their "activities are mostly at the local level" in Union County, North Carolina. See (Document No. 12, pp. 18-19).

In pertinent part, Plaintiffs, however, do recognize that a "public official or employee is entitled to qualified immunity for civil damages except when his or her conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." (Document No. 12, p. 16) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). As discussed above, and viewing all the allegations in the light most favorable to Plaintiffs, the undersigned is simply not persuaded that Plaintiffs have plausibly alleged that *any* of the Defendants here engaged in conduct that violated "clearly established" rights of which they would have known. Specifically, the undersigned cannot find that State Judicial Defendants violated clearly established rights of Plaintiffs not to be described as "estranged" in a state court proceeding, or not to be held apart from both male and female prison populations. Moreover, Plaintiffs have still not presented an argument that effectively rebuts Defendants' argument that they cannot be liable pursuant to Brady where there was no conviction and the related charges were dismissed.

The undersigned will respectfully decline to address each and every assertion by Plaintiffs regarding State Judicial Defendants' motion to dismiss, but is convinced that the arguments described herein, and others presented by Defendants, provide a sufficient basis to recommend dismissal of this action pursuant to Fed.R.Civ.P. 12(b)(1)(2) and/or (6).

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the "Motion To Dismiss By Defendants Cathey, Eason, Miles, Aldridge, And Union County Sheriff's Office" (Document No. 5) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the "Motion To Dismiss On Behalf Of Defendants Robison, Fredheim, And District Attorney's Office Of Union County, North Carolina" (Document No. 9) be **GRANTED**.

## V. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 2008). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**. Signed: September 23, 2019

David C. Keesler
United States Magistrate Judge