| | |
|---|---|
| CASEY L. JONES, a/k/a STEPHANIE HESS, and TODD M. HESS,<br><br>Plaintiffs,<br><br>v.<br><br>UNION COUNTY SHERIFF'S OFFICE, EDDIE CATHEY, in his official capacity and capacity as Sheriff of Union County, North Carolina, STEPHEN EASON, in his individual capacity and capacity as an employee of the United County Sheriff's Office, MENDEL MILES, in his individual capacity and capacity as an employee of the Union County Sheriff's Office, JOHN JULIAN ALDRIDGE, in his individual capacity and capacity as an employee of the Union County Sheriff's Office, JOHN DOES 1-4, in their individual capacities and capacities as employees of the Union County Sheriff's Office, DISTRICT ATTORNEY'S OFFICE OF UNION COUNTY, NORTH CAROLINA, TREY ROBISON, in his individual capacity and capacity as District Attorney of Union County, North Carolina, and KERRI FREDHEIM, in her individual capacity and capacity as Assistant District Attorney of Union County, North Carolina<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on the Motion To Dismiss By Defendants Cathey, Eason, Miles, Aldridge, and Union County Sheriff's Office (Doc. No. 5); the Motion To Dismiss On Behalf Of Defendants Robison, Fredheim, and District Attorney's Office Of Union County, North Carolina (Doc. No. 9); the Memorandum and Recommendation of the Honorable Magistrate

1

Judge David C. Keesler ("M&R") entered September 23, 2019 (Doc. No. 15), Plaintiffs' Objection to the M&R (Doc. No. 16) and Defendants' replies to Plaintiffs' Objection (Doc. Nos. 17 and 18).

After an independent review of the M&R, Plaintiffs' Objection thereto, and a *de novo* review of the full record, the Court concludes that the recommendation to grant these Motions to Dismiss is correct and in accordance with law. For the reasons stated below, and in the M&R, the findings and conclusions of the Magistrate Judge are **ADOPTED** and the Defendants' respective Motions to Dismiss are **GRANTED**.

## I.     STANDARD OF REVIEW

A district court may designate a magistrate judge to "submit to a judge of the court proposed findings of fact and recommendations for the disposition" of dispositive pretrial matters, including motions to dismiss. 28 U.S.C. § 636(b)(1). Any party may object to the magistrate judge's proposed findings and recommendations, and the court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  Objections to the magistrate's proposed findings and recommendations must be made "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir.), *cert. denied*, 551 U.S. 1157 (2007). However, the Court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  After reviewing the record, the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id.* Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.*

## II. FACTUAL AND PROCEDURAL BACKGROUND

The M&R provides a detailed and thorough description of the factual and procedural background of this action, which this Court adopts and will not be fully repeated here. However, a shorter summary of the most critical alleged facts from the Complaint, which are assumed to be true for the purposes of these motions, follows.

Plaintiff Casey L. Jones ("Jones"), also known as Stephanie Hess, is a partially pre-operative transgender female (with male external genitalia), who has been diagnosed with Gender Identity Disorder, a medical condition where the person's gender identity does not conform to his or her anatomical sex at birth. Jones looks like and dresses as a female as part of the treatment for her disorder. In 2016, Jones petitioned the South Carolina Ninth Judicial Circuit Family Court for an order granting her a gender change from male to female, which the court granted. Jones' South Carolina driver's license and her Oklahoma birth certificate now indicate she is female. Jones and

Plaintiff Todd M. Hess ("Hess") (together "Plaintiffs") were legally married on August 16, 2017, and Plaintiffs' marriage license lists Stephanie Hess as a female.

Jones also has been diagnosed with bipolar disorder and anxiety disorder and has drug and alcohol addictions. These addictions have led to Jones being involuntarily committed at least five times for treatment and also numerous engagements with law enforcement officers. Specifically, Union County Sheriff's Deputies were called to Plaintiffs' residence on "at least ten, if not more occasions, over the course of the past year, and they always found that Plaintiff Jones was in an inebriated state . . . Jones would routinely make the calls to 911 while in her drunken state."

In March 2018, Jones planned to enter treatment at Dove's Nest, a women's treatment program affiliated with Charlotte Rescue Mission, in Charlotte, North Carolina. However, she could not be immediately admitted first because a bed was not available until March 19, then because of another brief involuntary commitment on March 20, and subsequent inebriation after her discharge on March 21. In the evening of March 22, the night before she was to try once more to be admitted to Dove's Nest, Jones began drinking again, which led to Hess calling "911."

When employees of the Union County Sheriff's office arrived at Plaintiffs' residence, they noticed red marks surrounding Jones's neck and asked her if Hess choked her. Jones says that she does not remember her response. Defendant Eason wrote in his report that Hess admitted to choking his wife, but Hess asserts that he did not choke or harm Jones and that he did not admit to doing so to Defendant Eason. Ultimately, Hess was charged with "assault on a woman" in Union County File No. 18 CR 051508 and Jones was charged with "simple assault" in Union County File No. 18 CR 051509.

Jones and Hess were transported separately to the Union County jail. Jones was taken inside the jail first for processing, while Hess remained in the back of a patrol car. Although the timing of the call is unclear, Plaintiffs allege that Hess placed a telephone call to Defendant Miles, who they assert is the Captain of the Union County jail. In that call, Hess informed Miles that Jones had been legally declared a female, was listed as a female on her driver's license and that she suffers from Gender Dysphoria, which worsens if she is not treated as a female. In response, Miles allegedly said that the jail determines an inmate's sex based on "the parts they have" and not on their legal status. However, Miles also told Hess that he would discuss the situation with the Union County Sheriff's Office attorney, Defendant Aldridge.

The Union County jail segregates male and female prisoners, as is typical among correctional facilities. Although Jones alleges that she was "treated as a male" at the jail, she does not allege that she was housed with the men. Rather, the Complaint states that Jones was required to "remain secluded from other female inmates in one area of the jail." (Doc. 1, ¶147). Thus, Jones was apparently placed in neither the male nor the female section, and no further details are alleged related to her confinement, either as to the duration of that confinement or any of its conditions.[1] Jones alleges that she was listed as a "White / Male" at some point in the Union County Sheriff's Office website, although it is not alleged when and how this statement came to be made or how long it was on the website.

Also, Plaintiffs allege that during the Sheriff's Deputies' visits to their residence and during the arrest and booking process on March 22, various employees of the department, including one or more of the individual defendants, made derogatory and/or insensitive

---

[1] In another section of the Complaint, Plaintiffs similarly allege that "Defendant Aldridge kept Plaintiff Jones in solitary instead of placing her in the women's section of the prison." (Doc. 1, ¶31).

5

comments about Jones' gender, refusing to properly acknowledge her status as a female. Plaintiffs further allege that derogatory and/or discriminatory statements were made to or about Hess because of his relationship with Jones.

Finally, as detailed in the M&R, in addition to their allegations related to Jones' confinement and the discriminatory comments made to Jones and Hess, Plaintiffs allege that one or more of the defendants filed untruthful police reports, denied Plaintiffs access to public records, failed to turn over exculpatory evidence, slandered the Plaintiffs in court statements and failed to properly accommodate her Gender Dysphoria (alleging that Jones should have been taken to a treatment facility rather than to a jail and that placing Jones "in the woman's section of the jail would have been the best approach given her Gender Dysphoria and desires to be recognized as female").

Plaintiffs Jones and Hess, appearing *pro se* (although Hess is a licensed attorney), filed their Complaint in this action on September 19, 2018. The Complaint is brought against twelve Defendants and includes seventeen causes of action. Defendants include the Union County Sheriff's Office ("UCSO"), Sheriff Eddie Cathey ("Cathey"), Deputy Stephen Eason ("Eason"), Captain Mendel Miles ("Miles"), Attorney John Julian Aldridge ("Aldridge") and four (4) unnamed deputy John Doe employees of the UCSO ("Defendant Doe 1-4"), (all together, the "Sheriff Defendants"). Defendants also include the District Attorney's Office of Union County, North Carolina ("DAO"), District Attorney Trey Robison ("Robison"), and Assistant District Attorney Kerri Fredheim ("Fredheim") (all together, "State Judicial Defendants").

The state court action against Hess, charging him with assault on a female – his wife Casey Lee Jones, a/k/a Stephanie Hess – was dismissed on November 7, 2018.

The state charge against Jones for simple assault on Hess was also dismissed by the state prosecutor on November 7, 2018.

On December 19, 2018, the Sheriff Defendants and State Judicial Defendants each filed Motions to Dismiss seeking dismissal of all of Plaintiffs' claims against them pursuant to Fed.R.Civ.P. 12(b)(6) and the State Judicial Defendants also seek dismissal pursuant to Fed.R.Civ.P. 12(b)(1) and (2). See Doc. Nos. 5 and 9.

### III. DISCUSSION

#### A. The Sheriff Defendants' Motion to Dismiss

Plaintiffs' Complaint asserts Federal law causes of action ("COA") against the Sheriff Defendants for violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution (First and Second COA); violation of the Violence Against Women Act (Third and Fourth COA); discrimination, failure to accommodate and retaliation under the Americans with Disabilities Act (Fifth, Sixth and Seventh COA); violation of the Full Faith and Credit Clause (Eighth COA) and violation of the due process clause of the Fourteenth Amendment of the United States Constitution (Ninth COA). Also, Plaintiffs assert North Carolina State law causes of action for defamation (Tenth, Eleventh and Twelfth COA); perjury (Thirteenth, Fourteenth and Fifteenth COA) and aiding and abetting (Sixteenth COA).

##### 1. Denial of Equal Protection under the U.S. Constitution

###### a. Plaintiff Jones

Plaintiffs allege that both Jones and Hess were denied "equal protection of the law" in violation of the Fourteenth Amendment of the U.S. Constitution. More specifically, Jones alleges that "[i]n holding [her] in the Union County jail treating her as a male and certain deputies continuing to maintain [that she is] a male even though they had become aware she was legally

7

declared a female, Defendants treated [her] differently in comparison to others who were similarly situated."

The Equal Protection Clause of the Fourteenth Amendment commands that similarly situated persons be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (*citing, Plyler v. Doe*, 457 U.S. 202, 216 (1982)). To assert a viable claim for relief, Plaintiffs must demonstrate: (1) "that she has been treated differently from others with whom she is similarly situated"; and, (2) that the differing treatment resulted from intentional discrimination. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). To succeed on an equal protection claim, a plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen*, 326 F.3d 569, 584 (4th Cir. 2003) (internal quotation marks omitted) (citation omitted). If a plaintiff satisfies the above, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Morrison*, 239 F.3d at 654 (citations omitted).

"In a prison context," disparate treatment passes muster so long as "the disparate treatment is 'reasonably related to [any] legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (*quoting Shaw v. Murphy*, 532 U.S. 223, 225 (2001)). To evaluate the reasonableness of a prison's policy, courts apply the factors set forth in *Turner v. Safley*, 482 U.S. 78, 89–92 (1987). *See Veney*, 293 F.3d at 732. The *Turner* factors are: (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to

the challenged regulation or action. *Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (*quoting Lovelace*, 472 F.3d at 200). The Court need not "weigh evenly, or even consider explicitly, each of the four Turner factors." *Spies v. Voinovich*, 173 F.3d 398, 403–04 (6th Cir. 1999) (citations omitted); *see Veney*, 293 F .3d at 732 (finding three factors applicable); *Lambirth v. Cambra*, 177 F. App'x 691, 691–92 (9th Cir. 2006) (finding only the first factor relevant, and explaining that the inquiry then turns to whether "the inmate severs that common sense connection"). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton, v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted).

There is no question that prison officials have a challenging path to navigate in determining how best to handle "transgender"[2] prisoners and, in accordance with *Veney* and the other cases cited above, they are entitled to substantial deference on their journey. *See Prudent Policy: Accommodating Prisoners with Gender Dysphoria*, 12 Stan. J. Civ. Rts & Civ. Liberties 283 (2016) ("Courts afford prisons wide latitude to craft institutional policy, including policies for classifying inmates according to sex and security risk and assigning housing for them."). For example, officials must consider their responsibility for the safety of inmates, including protecting male-to-female transgender inmates from violence when placed in male general prison populations, as well as be mindful of the privacy rights of other inmates, when deciding where to house transgender inmates, particularly pre-operative inmates. *See, e.g.*, *Shaw v. District of Columbia*, 944 F. Supp. 2d 43, 48-52, 57 (D.D.C. 2013)(recognizing a post-operative transgender inmate as female and criticizing a jail for knowingly housing her among men); *Crosby v. Reynolds*,

---

[2] Indeed, the group of prisoners who might be considered "transgender" is itself not clearly defined, and might include a wide spectrum of individuals of both male and female designated birth genders who are at various stages of transitioning between genders and may or may not have been legally adjudicated to be a member of the transitioned gender.

9

763 F.Supp. 666, 667 (D. Me. 1991)(prison sued by female inmate when the prison decided to house a pre-operative male to female transgender inmate in the general female population). However, the considerable deference given to prison officials does not absolve them from their obligation to choose their path thoughtfully and respectfully, with due regard for the constitutional rights of those prisoners. *See De'Lonta v. Johnson*, 708 F.3d 520 (4th Cir. 2013).

For the purpose of the consideration of these motions, the Sheriff Defendants accept as true that Jones was not placed with the jail's female population because she is transgender, and that transgender female detainees are similarly situated to cisgender female detainees.[3] Thus, the Sheriff Defendants assume Plaintiffs have adequately pled that Jones was treated differently than similarly situated cisgendered female detainees. The controlling issue before the Court is therefore whether the Sheriff Defendants' assumed disparate treatment of Jones can be justified under the applicable level of "rational" scrutiny, in the specific context of the operation of a prison. See *Morrison*, 239 F.3d at 654; *Veney*, 293 F.3d at 732.

The Fourth Circuit's decision in *Veney* governs the Court's analysis. The first step in applying *Veney* to this action (i.e., to determine if there is reasonable legitimate penological interest supporting the Defendants' conduct) is to clearly define the specific wrongful behavior Plaintiffs have alleged. While the Complaint repeatedly alleges in conclusory language that the Defendants "treated" Jones as a male, the actual allegations of her "treatment" reflect only that the jail placed her in a "secluded" or "solitary" part of the prison separate from both the male and female general populations.[4]

---

[3] Accordingly, the Court has not considered and does not express any view as to the merits of this issue.
[4] Further, the Complaint makes no allegations challenging the conditions of that confinement; indeed, there are no allegations at all describing those conditions.

Beyond Plaintiffs' limited allegation related to Jones' housing at the jail, the Complaint also alleges that Jones was "called" male both by Sheriff Deputies and on the Sheriff Department's website, but there is no specific allegation that those particular references[5] (which were plainly inappropriate in light of the legal declaration that Jones is female) standing alone and apart from the jail's specific *treatment* of Jones, independently rise to the level of an actionable constitutional injury. *See Paul v. Davis*, 424 U.S. 693 (1976) (plaintiff's charge that police defamation of him, standing alone and apart from any other governmental action with respect to him, did not state a claim for relief under 42 U.S.C. §1983 and the Fourteenth Amendment). In the absence of such an allegation and clear supporting authority, which has not been cited, the Court finds that such incorrect references do not create an independent basis to support Plaintiffs' constitutional claims.

Having identified the specific disparate treatment alleged by Plaintiffs, the Court finds that there were legitimate penological interests that support the jail's discretionary decision to segregate Jones from both the male and female general populations. Specifically applying the applicable *Turner* factors,[6] (1) there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government because "safety and security are legitimate penological interests," and there is a rational relationship between security and separate housing on the basis of sexual orientation and gender. *Veney*, 293 F.3d at 734; (2) "the impact on jail resources from spending additional time in an effort to determine which transgender detainees to house with which sex detainees' general population and burdens on guards to prevent or remedy any associated violence from cohabitations is sufficient to support separate housing." *Veney*, 293

---

[5] The Sheriff Defendants also at other times clearly referenced Jones as female, including charging Hess with "assault on a female."

[6] As in *Veney*, the second *Turner* factor, whether alternate means of exercising the rights at issue are open to the inmate, is not applicable to this action.

F.3d at 735; and (3) as discussed above, there does not exist any "obvious, easy alternatives" to the jail's decision to house Jones separately. *Id*. Accordingly, because Jones has "not alleged facts, that if proven true, would demonstrate that the alleged prison policy at issue is not reasonably related to legitimate penological interests, [her] complaint fails to state a claim upon which relief may be granted" on her equal protection claim. *Id.*

To be clear, the Court's ruling on this claim is limited to the particular factual allegations related to the Sheriff Defendants' treatment of Jones as described in the Complaint and does not address the constitutionality of any broader Union County jail "policy" that may or may not exist with respect to the housing and handling of transgender prisoners. Indeed, it is unclear from the Complaint what the policy of the jail is on these issues or whether the jail even has a policy that is generally applied to housing transgender inmates. The Complaint alleges that one of the defendants stated that "the jail determines an inmate's sex based on the 'the parts they have' and not on their legal status." However, Jones was not housed either based on her "parts" or in accordance with her legal status. Thus, either this statement does not reflect the jail's policy (as appears to be the case), or it was not followed with respect to Jones and is not at issue. Further, even a policy of segregating transgender prisoners may potentially raise constitutional concerns, depending on the conditions of the segregation, which are not alleged here. *See Tates v. Blanas*, 2003 WL 23864868 (E.D. Ca. 2003) (acknowledging "considerable deference to reasonable decisions by jail officials," but prohibiting lengthy confinement automatically classifying transgender prisoners as dangerous; routinely shackling them; denying them opportunities to socialize, attend religious services and shower; and holding that "transgender inmates are entitled to be treated with the same respect as other prisoners.") Accordingly, both judicial restraint and the limited scope of the Court's review

of a Complaint in the context of a motion to dismiss, counsel that the Court not reach to decide the constitutionality of the uncertain or non-existent transgender jail "policy" suggested here.

### b. Plaintiff Hess

Plaintiffs also assert an equal protection claim on behalf of Plaintiff Hess, alleging that he was verbally harassed because he was married to a transgender female. (Doc. 1, ¶¶ 219, 222). However, the Sheriff Defendants assert that the Complaint fails to include any allegation that Hess was treated differently than any other similarly situated person, negating an equal protection claim. *See Etters v. Bennett*, 2011 WL 976472, at * 11 (E.D.N.C. March 16, 2011). Also, Defendants contend that Hess' conclusory assertion that he was discriminated against because of his "gender identity" "being a straight male who is married to a transgender female," is insufficient to support a plausible claim. The Magistrate Judge found that Plaintiffs have not made a plausible allegation that Hess was treated differently than other married men and this Court agrees. Hess' treatment on or about March 22, 2018, was based on evidence of a crime, including: red marks on Jones' neck, a broken cell phone, and a 911 call alleging that he choked Jones. Thus, Plaintiffs have not plausibly alleged that Hess was treated any differently than any similarly situated person, regardless of marital status and/or the gender or sexual orientation of either partner.

Accordingly, the Court finds that Plaintiffs' Second Cause Of Action alleging an equal protection claim related to Plaintiff Hess fails to state a claim upon which relief may be granted, and, therefore, will be dismissed.

### 2. Other Federal Claims

The Court agrees with the reasoning of the Magistrate Judge concluding that the motion to dismiss each of the Plaintiff's remaining Federal claims against the Sheriff Defendants should be granted. Accordingly, the Court adopts the M&R as to Plaintiffs' claims under the Violence

Against Women Act (Third and Fourth COA); discrimination, failure to accommodate and retaliation under the Americans with Disabilities Act (Fifth, Sixth and Seventh COA); violation of the Full Faith and Credit Clause (Eighth COA) and violation of the due process clause of the Fourteenth Amendment of the United States Constitution (*Brady* claim, Ninth COA) and will grant the Sheriff Defendants' motion to dismiss those claims.

### 3. State Law Claims

Similarly, the Court agrees with the Magistrate Judge that Plaintiffs' claims against the Sheriff Defendants under North Carolina state law should be dismissed and finds that the reasons given for his recommendation fully support his conclusions. Therefore, the Court will adopt the M&R as it relates to Plaintiffs' State law causes of action for defamation (Tenth, Eleventh and Twelfth COA); perjury (Thirteenth, Fourteenth and Fifteenth COA) and aiding and abetting (Sixteenth COA) and will dismiss those claims.

### B. The State Judicial Defendants' Motion to Dismiss

In addition to their claims against the Sheriff Defendants, Plaintiffs assert that the State Judicial Defendants are liable for (1) their alleged failure to provide exculpatory evidence in the underlying state court actions pursuant to *Brady*; (2) aiding and abetting the Sheriff Defendants' alleged wrongful conduct; and (3) describing the Plaintiffs as "estranged" without having definitive proof to support the statement during a motion hearing in state district court. However, Plaintiffs have not alleged a waiver of sovereign immunity by Congress for these claims, that the State has consented to waive its sovereign immunity for these claims, or that they are seeking prospective declaratory relief from an ongoing violation of federal law by the State Judicial Defendants. Therefore, as discussed in detail in the M&R, the claims against the State Judicial

14

Defendants are barred by the Eleventh Amendment, and this Court accordingly lacks subject matter jurisdiction and personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and (2).

Further, a "public official or employee is entitled to qualified immunity for civil damages except when his or her conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court agrees with the Magistrate Judge that Plaintiffs have not plausibly alleged that any of the Defendants engaged in conduct that violated "clearly established" rights of which they would have known. Moreover, Plaintiffs cannot be liable pursuant to *Brady* where there was no conviction and the related charges were dismissed.

Accordingly, the Court adopts the M&R as it relates to the claims against the State Judicial Defendants and will dismiss the Plaintiffs' claims against them pursuant to Fed.R.Civ.P. 12(b)(1)(2) and (6).

## IV. CONCLUSION

**NOW THEREFORE IT IS ORDERED THAT**:

(1) The Magistrate Judge's M&R, (Doc. No. 15), is **ADOPTED**; and

(2) The Sheriffs' Defendants Motion to Dismiss, (Doc. No. 5), is **GRANTED**;

(3) The State Judicial Defendants' Motion to Dismiss, (Doc. No. 9) is **GRANTED**; and

(4) The Clerk is directed to enter **Judgment** in accordance with this Order, dismissing this action.

Signed: November 4, 2019

Kenneth D. Bell
United States District Judge